IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MARY HERNANDEZ and**
**BORDER FAIR HOUSING and**
**ECONOMIC JUSTICE CENTER**,

      Plaintiffs,

      vs.                                                     No. 08cv732 MCA/WPL

**MONARCH REAL ESTATE CORP.,**
**STEPHEN TATE, and VALERIE**
**SWEARINGEN,**

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Valerie Swearingen's *Application for Temporary Restraining Order and Permanent Injunction* [Doc. 10], filed October 9, 2008. On October 17, 2008, the Court held a hearing on the motion. Having considered the parties' submissions, the relevant law, the arguments of counsel as set forth at the hearing, and otherwise being fully advised in the premises, the Court denies the motion.

## I. BACKGROUND

In December 2006, Plaintiff Mary Hernandez contacted Defendant Stephen Tate, a rental agent with Defendant Monarch Realty, to inquire about renting space for her mobile home at the Curry Mobile Home Park in Las Cruces. After first confirming that rental space was available, Mr. Tate became aware that Ms. Hernandez had grandchildren and that they

often stayed with her. Mr. Tate thereafter told Ms. Hernandez that he did not rent to families with children, and he would only rent to her if she promised to keep her grandchildren inside and never allow them to stay overnight. Ms. Hernandez contacted the Border Fair Housing and Economic Justice Center ("Border Fair Housing") for assistance and, after its investigation confirmed what it believed to be discrimination on the basis of familial status, Border Fair Housing and Ms. Hernandez filed suit against Monarch Realty; Stephen Tate; and Valerie Swearingen, the owner of the Curry Mobile Home Park.

Valerie Swearingen, in a motion concurred in by the other defendants, now seeks a temporary restraining order (or gag order) to prevent Plaintiffs from engaging in a pretrial "media blitz" that Ms. Swearingen believes is intended to sway the Court and prejudice potential jurors. In support of her motion, Ms. Swearingen has attached articles describing the nature of the lawsuit and Ms. Hernandez's allegations that were published in the online versions of The Albuquerque Journal and The Las Cruces Sun-News, as well as a press release put out by Border Fair Housing. Ms. Swearingen also maintains that Plaintiffs have caused articles to be published at the following online web sites: www.theconcreteproducer.com/industry-news, www.mesareconstruction.com/industrynews, www.tmcnet.com, and www.kfoxty.com/news. Copies of articles or items of publicity that allegedly were published at the preceding four web sites have not been made a part of the record or otherwise produced to the Court.

**II. ANALYSIS**

"A party seeking to impose a gag order on any trial participant must show that there is a 'reasonable likelihood' that media attention or extrajudicial commentary will prejudice a fair trial." Pfahler v. Swimm, 2008 WL 323244, at *1 (D.Colo. 2008) (unpublished) (*citing* United States v. Tijerina, 412 F.2d 661, 666 (10th Cir.1969)).  Put another way, to secure her gag order, Ms. Swearingen must demonstrate "'reasonable likelihood' of prejudicial news which would make difficult the impaneling of an impartial jury and tend to prevent a fair trial."  Tijerina, 412 F.2d at 666.

A request for an order prohibiting trial participants from speaking about their case is a request for a prior restraint and, as such, comes to any court with a heavy presumption against its constitutional validity.  See Twohig v. Blackmer, 121 N.M. 746, 750 (N.M. 1996).  The required balancing act mandates that the Court weigh "the heavy presumption against . . . constitutional validity that an order restraining publication bears . . . against the importance of the defendant's right to trial by an impartial jury."  Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 545 (1976) (internal citations omitted).  In assessing the propriety of a gag order, the Court

> must examine the evidence . . . to determine (a) the nature and extent of pretrial news coverage; (b) whether other measures would be likely to mitigate the effects of unrestrained pretrial publicity; and (c) how effectively a restraining order would operate to prevent the threatened danger. The precise terms of the restraining order are also important [and the Court] must then consider whether the record supports the entry of a prior restraint on publication, one of the most extraordinary remedies known to our jurisprudence.

3

Id. at 562.  Additionally,

> [t]hough the speech of an attorney participating in judicial proceedings may be subjected to greater limitations than could constitutionally be imposed on other citizens or on the press . . . . the limitations on attorney speech should be no broader than necessary to protect the integrity of the judicial system and the defendant's right to a fair trial. . . .

United States v. Walker, 890 F.Supp. 954, 957 (D.Kan. 1995) (internal citations omitted). Less restrictive alternatives to a gag order include, among other things, "a searching voir dire [and] emphatic jury instructions. . . ." Id.

Applying these factors and considerations to the instant case, the Court concludes that Ms. Swearingen has failed to demonstrate their entitlement to a gag order.  As an initial matter, the extent of the news coverage so far has been minimal and not particularly inflammatory or sensational.  The news articles, which resulted from Border Fair Housing's press release, describe and track the allegations in Plaintiffs' *Complaint*.  But contrary to what Ms. Swearingen represents, I do not conclude that Plaintiffs are "bombarding" the press. [See Doc. 11 at 3 ("If the Plaintiff continues to bombard the press with its one-sided and prejudicial coverage of this issue, there is little question but that it could, and potentially would, impact the outcome through an out-of-court nonjudicial process.").[1]

---

[1] To put the matter in perspective, compare the coverage here to that in Pfahler, a District of Colorado case in which a 60-year-old skier brought a personal-injury action against an 8-year-old (and the child's father) who collided with him at the Beaver Creek Ski Resort.  The coverage here comes nowhere near that involved in Pfahler, in either amount or level of vitriol, yet the request for gag order was denied in Pfahler, since, in addition to finding that the publicity there was not so great that a fair trial could not be had, the court concluded that less restrictive means were available to mitigate any effects of that publicity.

As for the second applicable factor, I conclude that there exist other, less drastic measures to ensure a fair trial. First, it should be noted that this case was filed in Las Cruces, but jury pools summonsed to this Court (*i.e.*, the Albuquerque division) come from central and northern New Mexico. Ms. Swearingen has not shown how Plaintiffs' so-called "media blitz" is reasonably likely to prejudice a trial in Albuquerque. Moreover, before seating any jury, this Court typically conducts an exhaustive voir dire, which includes questioning potential jurors as to whether anyone has heard anything about the case for which they might be called to serve, would seem sufficient to mitigate any effects of unrestrained pretrial publicity. Also, seated juries in this Court are expressly instructed as a matter of course, both during the trial and each time they are excused for the day, (1) to keep an open mind; (2) not to discuss the case with anyone; and (3) to "move on" from any TV, radio, newspaper, Internet, or other story on the case before them that might catch their eye. Juries in this Court receive this instruction consistently and repeatedly.

Additionally, at the close of the evidence in a trial in this matter, the Court would instruct the jurors that "it is [their] sworn duty to follow the law . . . defin[ed] for [them[,]" and also that they must determine the facts from a consideration of only the evidence admitted in the case, meaning sworn witness testimony, admitted exhibits, and any and all agreed-to or stipulated facts. Juries are presumed to follow instructions provided them. Crawley v. Dinwiddie, 533 F.3d 1226 (10th Cir. 2008).

Finally, Ms. Swearingen has not even made an attempt to demonstrate the third factor of the Nebraska Press Ass'n case, *to wit*, "how effectively a restraining order would operate

5

to prevent the threatened danger" in this case.  Nebraska Press Ass'n, 427 U.S. at 545.  Because Ms. Swearingen has not demonstrated entitlement to the gag order they seek, her motion will be denied.  As with any pretrial order, this order is subject to reconsideration should unforeseen circumstances arise, or should future events merit such reconsideration.

### III. CONCLUSION

For the reasons explained herein, as well as those set forth on the record of the hearing in this matter, the *Application for Temporary Restraining Order and Permanent Injunction* will be denied.

**IT IS, THEREFORE, ORDERED** that Defendant Valerie Swearingen's *Application for Temporary Restraining Order and Permanent Injunction* [Doc. 10] is **DENIED**;

**IT IS FURTHER ORDERED** that this order is subject to reconsideration should unforeseen circumstances arise, or should future events merit such reconsideration.

**SO ORDERED** this 17th day of October, 2008, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge