## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**MARY L. HERNANDEZ**, and
**BORDER FAIR HOUSING AND**
**ECONOMIC JUSTICE CENTER**,

      Plaintiffs,

      vs.                               No. CIV 08-732 MCA/WPL

**MONARCH REAL ESTATE CORP.**,
**STEPHEN TATE**, and **VALERIE**
**SWEARINGEN**,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

      **THIS MATTER** comes before the Court on the *Motion for Summary Judgment Against Plaintiff Hernandez* [Doc. 55] filed by Defendants Monarch Real Estate Corporation and Stephen Tate on May 4, 2009, *Plaintiffs' Motion for Summary Judgment and Memorandum in Support* [Doc. 62] filed on June 1, 2009, and *Defendant Swearingen's Motion for Summary Judgment Against Co-Defendant Monarch Real Estate Corp. on Defendant Swearingen's Cross-Claim Against Co-Defendant Monarch Real Estate Corp.* [Doc. 68] filed on June 9, 2009.  Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court  grants the motions in part, denies the motions in part, and orders supplemental briefing for the reasons set forth below.

I.  **BACKGROUND**

On August 6, 2008, Plaintiffs Mary L. Hernandez and Border Fair Housing and Economic Justice Center ("BFHEJC") filed this civil action against Defendants Monarch Real Estate Corporation ("Monarch"), Stephen Tate, and Valerie Swearingen.  Plaintiffs' *Complaint* alleges that these Defendants violated the Fair Housing Act and the fair housing provisions of the Las Cruces Municipal Code by refusing to rent spaces at the Curry Mobile Home Park to persons who are domiciled with children, imposing burdensome and oppressive terms and conditions on such persons, and providing rental information that expresses a preference for persons without children.  Plaintiffs allege that Defendant Swearingen is the owner of the mobile-home park, that Defendant Tate is employed by Defendant Monarch, and that Defendants Monarch and Tate committed the violations while acting as Defendant Swearingen's agent pursuant to a property-management agreement. [Doc. 1; Ex. 2 to Doc. 62-4.]   Defendant Swearingen has filed a cross-claim for indemnification against Defendants Monarch and Tate.  [Doc. 9.]

The violations alleged in Plaintiffs' *Complaint* arise from a series of conversations between Plaintiff Hernandez and Defendant Tate in December 2006 and January 2007, during which Plaintiff Hernandez inquired about renting a space in the Curry Mobile Home Park in Las Cruces, New Mexico in response to a "for rent" sign posted by Defendant Monarch.  According to Plaintiff Hernandez, Defendant Tate initially represented that he was willing to rent a space to her based on information that she was a single older adult

living alone, but when he found out that her minor grandchildren visited her and stayed at her home on a regular basis, he began to make hostile remarks about not wanting or allowing persons with children to rent spaces in the mobile-home park.  These remarks deterred Plaintiff Hernandez from pursuing her desire to rent a space there, and she eventually rented a space at a different location.   [Ex. A to Doc. 55-2.]

Plaintiff Hernandez reported her experience with Defendant Tate to Plaintiff BFHEJC on January 25, 2007.  Plaintiff BFHEJC commenced an investigation by having matched pairs of testers contact Defendant Tate and other employees of Defendant Monarch to inquire about renting space at the Curry Mobile Home Park.  Although not disclosed to Defendants at that time, the real purpose of the testers' inquiries was to determine whether Defendants were treating prospective renters differently based on their familial status.  The testers had no actual need or intention to rent space at the mobile-home park. [Ex. 4 to Doc. 58-5.]

In February 2007, the testers reported that Defendant Tate and other employees of Defendant Monarch were engaging in such discriminatory treatment based on familial status. The testers who identified themselves as adults without children were offered housing while the testers who stated that they had children living with them were not offered a rental space or were advised of additional terms and conditions applicable to renters with children. [Ex. 4, 5, 6, 7, 8, 9, 10, 11 to Doc. 62.]

Following BFHEJC's investigation, Plaintiffs retained counsel and sent a letter to the President of Defendant Monarch dated November 29, 2007, advising him of the results of Plaintiff BFHEJC's investigation and the prospect of litigation based on that investigation. [Ex. 20 to Doc. 62-22.]  Defendant Monarch responded with letters of its own denying that any unlawful discrimination took place and noting that several persons with children were living in the park at the time.  [Ex. 23, 24 to Doc. 62-25.]  Defendant Swearingen later responded by discharging Defendant Monarch as a property rental agent and denying responsibility for any unlawful activities undertaken by Defendant Monarch or its employees.  [Ex. 26 to Doc. 62-28.]

After this litigation commenced, Defendants Monarch and Tate moved for summary judgment against Plaintiff Hernandez based on the assertion that she lacks standing to sue under the Fair Housing Act or the fair-housing provisions of the municipal code because her grandchildren were not domiciled with her at the time of the events in question.  [Doc. 55.] In response, Plaintiff Hernandez admits that "her grandchildren did not live with her, but that she watched them before and after school and on some weekends."  [Doc. 58, at 5.]  Even if this admission means that the grandchildren were not domiciled or in a custodial relationship with her, Plaintiff Hernandez asserts that she still has standing to sue Defendants because she was aggrieved by their actions.  [Doc. 58.]

Plaintiffs also filed a summary-judgment motion of their own against all Defendants. Plaintiffs' motion does not directly address the issue of standing but instead focuses on

establishing each Defendant's liability for the alleged violations of the Fair Housing Act and the Las Cruces Municipal Code.  In particular, Plaintiffs' motion seeks to rebut any assertion that the mobile-home park falls under an exemption to the Fair Housing Act for "housing for older persons."  Plaintiffs' motion further asserts that Defendant Swearingen is liable for violations committed by other Defendants based on the principle of *respondeat superior* or a theory of negligent hiring, supervision, and retention.  [Doc. 62.]

Defendants deny that they are liable for the violations alleged in Plaintiffs' *Complaint*. Defendants Monarch and Tate assert that there are genuine issues of material fact which preclude summary judgment as to their liability.  [Doc. 77.]  Defendant Swearingen asserts that she cannot be held liable when she had no knowledge of the other Defendants' statements or actions with respect to prospective tenants' familial status.  [Doc. 72.]  In addition, Defendant Swearingen has filed a motion for summary judgment on her cross-claim against Defendant Monarch.  [Doc. 68.]

II.   **ANALYSIS**

A.   **Standard of Review**

Under Fed. R. Civ. P. 56(c), the Court may enter summary judgment when the motion papers, affidavits, and other evidence submitted by the parties show that no genuine issue exists as to any material fact, and that the moving party is entitled to judgment as a matter of law.  A "genuine issue" exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party as to that issue.  See

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986).  A fact is "material" if it might affect the outcome of the case.  See id. at 248.

When the movant is also the party bearing the burden of persuasion on the claim for which he or she is seeking summary judgment, the movant must show that the record as a whole satisfies each essential element of his or her case and negates any affirmative defenses in such a way that no rational trier of fact could find for the non-moving party.  See 19 Solid Waste Dep't Mechanics v. City of Albuquerque, 156 F.3d 1068, 1071 (10th Cir.  1998); Newell v. Oxford Mgmt., Inc., 912 F.2d 793, 795 (5th Cir. 1990); United Missouri Bank of Kansas City, N.A. v. Gagel, 815 F. Supp. 387, 391 (D. Kan. 1993).  But when the movant does not bear the burden of proof as to the claim or defense at issue in the motion, then judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial).  See Celotex, 477 U.S. at 324.  "To survive summary judgment, 'nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.'"  Murray v. City of Sapulpa, 45 F.3d 1417, 1422

(10th Cir. 1995) (quoting Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir.1991)).  Thus, "[h]earsay testimony cannot be considered" in ruling on a summary-judgment motion.  Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995); see also Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995) (applying this rule to inadmissible hearsay testimony in depositions).

The Court may, however, consider any undisputed material facts set forth in the motion papers which are deemed admitted by operation of D.N.M. LR-Civ.56.1.  See LaMure v. Mut. Life Ins. Co. of N.Y., 106 F.3d 413, 1997 WL 10961, at *1 (10th Cir. 1997) (unpublished disposition); Smith v. E.N.M. Med. Ctr., 72 F.3d 138, 1995 WL 749712, at *4 (10th Cir. 1995) (unpublished disposition); Waldridge v. American Hoechst Corp., 24 F.3d 918, 920-24 (7th Cir.1994) (approving use of local rule similar to D.N.M. LR-Civ. 56.1(b)). "Admissions in a party's pleadings or in a pretrial order are similarly binding."  Underberg v. United States, 362 F. Supp. 2d 1278, 1283 (D.N.M. 2005).  "However, a party generally may not introduce statements from its own answers to interrogatories or requests for admission as evidence because such answers typically constitute hearsay when used in this manner."  Id. (citations omitted).  The Court also does not consider evidence submitted for the first time in a reply brief.  See Beaird v. Seagate Technology, Inc., 145 F.3d 1159, 1164-65 (10th Cir. 1998).

Apart from these procedural and evidentiary limitations, it is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on

a motion for summary judgment.  Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

**B.     Article III Standing**

Before turning to the merits of the parties' claims and cross-claims, the Court must first determine whether it has jurisdiction to adjudicate them.  Defendants Monarch and Tate have raised a jurisdictional issue by moving for summary judgment against Plaintiff Hernandez on the grounds that she lacks standing to sue them.  If these Defendants are correct in asserting that Plaintiff Hernandez lacks standing to pursue one or more of her claims, then the Court must also examine whether the other Plaintiff in this case,  BFHEJC, has standing to sue in its own right.

Our Supreme Court's most recent pronouncement on this issue emphasizes that courts have "an independent obligation to ensure that standing exists, regardless of whether it is challenged by any of the parties."  Summers v. Earth Island Inst., 129 S. Ct. 1142, 1152 (2009).  "Standing is a jurisdictional issue that may be raised by the court at any time."  Wilson v. Glenwood Intermountain Properties, Inc., 98 F.3d 590, 592-93 (10th Cir. 1996).  Further, "parties cannot confer subject matter jurisdiction on the Court by agreement."  Id. at 593.  Thus, the Court is obliged to consider each Plaintiff's standing regardless of whether or to what extent the parties have raised it in their motion papers.

In most cases, "[t]he question of standing 'involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" Bennett v. Spear, 520 U.S. 154, 162 (1997) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). Prudential limitations on standing do not apply here, however, because Congress intended standing under the Fair Housing Act to extend as far as constitutional limitations alone will allow. See id. "Courts thus lack authority to erect prudential barriers to restrict the standing of plaintiffs bringing suit under the [Fair Housing Act] beyond the constitutional parameters erected by Article III." Bangerter v. Orem City Corp., 46 F.3d 1491, 1497 (10th Cir. 1995).

These parameters are derived from the wording of Article III of the United States Constitution, which limits the role of the federal Judiciary to the adjudication of actual cases or controversies. See Initiative and Referendum Inst. v. Walker, 450 F.3d 1082, 1087 (10th Cir. 2006) (en banc). At this stage of the litigation, Plaintiffs can no longer rely solely on the allegations in their *Complaint* in order to establish standing. They must instead come forward with admissible evidence to support each element required to establish an actual case or controversy under Article III. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561-62 (1992). Further, Plaintiffs bear the burden of showing that they have "standing for each type of relief sought." Summers, 129 S. Ct. at 1149.

As a general matter, our Supreme Court has set forth three elements that Plaintiffs must satisfy to meet the constitutional requirements for standing. See id. *First*, Plaintiffs must demonstrate an "injury in fact," which is "concrete," "distinct and palpable," and

"actual or imminent." Whitmore v. Arkansas, 495 U.S. 149, 155 (1990) (citation and internal quotation marks omitted). *Second*, Plaintiffs must establish "a causal connection between the injury and the conduct complained of--the injury has to be 'fairly trace[able] to the challenged action of the defendant, and not ... th[e] result [of] some third party not before the court.'" Lujan, 504 U.S. at 560-561 (quoting Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41-42 (1976)). *Third*, Plaintiffs must show a "'substantial likelihood' that the requested relief will remedy the alleged injury in fact." Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 771 (2000) (quoting Simon, 426 U.S. at 45).

The manner in which these elements may be satisfied depends in part on whether the Plaintiff is an individual or an organization. In this case, the Court first examines whether the individual Plaintiff, Mary Hernandez, has standing to bring claims against the Defendants; the Court then turns to the standing of the organizational Plaintiff, BFHEJC.

## 1. **Plaintiff Hernandez**

Defendants Monarch and Tate contend that Plaintiff Hernandez lacks standing to sue because her relationship with her grandchildren does not fall within the applicable statutory definition of "familial status." The Fair Housing Act generally prohibits housing discrimination on the basis of "familial status," 42 U.S.C. § 3604, which the Act defines as:

one or more individuals (who have not attained the age of 18 years) being domiciled with--
(1) a parent or another person having legal custody of such individual or individuals; or

> (2) the designee of such parent or other person having such custody, with the written permission of such parent or other person.
> The protections afforded against discrimination on the basis of familial status shall apply to any person who is pregnant or is in the process of securing legal custody of any individual who has not attained the age of 18 years.

42 U.S.C. § 3602(k); see City of Edmonds v. Oxford House, Inc., 514 U.S. 725, 728 n. 1 (1995) (noting that in 1988, Congress extended the Fair Housing Act to proscribe "'familial status' discrimination, *i.e.*, discrimination against parents or other custodial persons domiciled with children under the age of 18"). The Las Cruces Municipal Code contains the same definition of "familial status" and the same prohibitions on housing discrimination. See Las Cruces, N.M., Mun.Code §§ 13-61, 13-65 (2007). The Code states that these provisions are to be interpreted consistently with federal law. See id. § 13-63.

Defendants Monarch and Tate contend that Plaintiff Hernandez does not have the necessary "familial status" because at the time she interacted with these Defendants, the undisputed facts show that her grandchildren were not domiciled with her and she was not in the process of securing their legal custody. Thus, according to Defendants Monarch and Tate, Plaintiff Hernandez was not among the class of persons protected by the statutory prohibitions on housing discrimination based on "familial status" during the relevant time period. These Defendants further contend that insofar as Plaintiff Hernandez is not among this protected class, their words or actions could not have caused an "injury in fact" to any legally protected interest that the Fair Housing Act and its municipal corollary were meant to redress.

Plaintiff Hernandez responds by pointing to instances in which courts have conferred standing on persons who were not themselves within the class that the Fair Housing Act was designed to protect or who did not actually intend to obtain the housing that was the subject of the discrimination.  See, e.g., Mountain Side Mobile Estates P'ship v. Secretary of Housing and Urban Dev., 56 F.3d 1243, 1249 (10th Cir. 1995); Hamad v. Woodcrest Condo. Ass'n, 328 F.3d 224, 232 (6th Cir. 2003).  In each of those cases, however, the persons in question were able to show a causal nexus between their alleged injuries or grievances and an instance of prohibited discrimination against someone who *was* a member of the protected class.  See  Wasserman v. Three Seasons Ass'n No. 1, Inc., 998 F. Supp. 1445, 1447-48 (S.D. Fla. 1998) (distinguishing cases where plaintiffs outside the protected class had standing to sue based on ancillary injuries arising from prohibited discrimination against a member of the protected class).  The lesson to be drawn from these authorities is that standing to sue under the Fair Housing Act does not arise solely from a showing of concrete injury to the plaintiff; the plaintiff also must establish a sufficient nexus between that injury and some form of prohibited discrimination against a protected class member.

To determine whether Plaintiff Hernandez is a member of a protected class or can relate her alleged injuries to an identifiable protected class member, the Court must examine in greater detail each provision of the Fair Housing Act and the Las Cruces Municipal Code that Defendants are alleged to have violated.  As our Supreme Court noted in Havens Realty Corp. v. Coleman, 455 U.S. 363, 374 (1982), some portions of the Fair Housing Act require

-12-

that a person within a protected class make a "'bona fide' offer to rent or purchase" housing in order to establish a violation, while other provisions simply require a "discriminatory representation," which can be made to any person regardless of whether they actually intend to enter into a rental or purchase agreement.[1]   See Smith v. Pacific Properties and Development Corp., 358 F.3d 1097, 1102-03 (9th Cir. 2004) (contrasting 42 U.S.C. § 3604(a) with 42 U.S.C. § 3604(d)).  There is also a third provision of the statute that, among other things, prohibits publishing advertisements that indicate a preference or limitation based on gender.  See 42 U.S.C. § 3604(c).  With respect to the latter provision, the Tenth Circuit has reasoned that:  "The advertisements and not the refusals to rent are the statutory wrongs at issue.  People may be subjected to discriminatory advertisements for apartments whether or not they are otherwise qualified or eligible to rent the apartments."  Wilson v. Glenwood Intermountain Properties, Inc., 98 F.3d 590, 594-95 (10th Cir. 1996).  The corresponding provisions of the Las Cruces Municipal Code are to be interpreted consistently with these federal authorities.  See Las Cruces, N.M., Mun. Code § 13-63.

The analysis of Plaintiffs' standing also turns on the applicable standard of review, for unlike Havens, the Plaintiffs' claims in the present action are before the Court on motions for summary judgment rather than at the pleading stage.  Thus, Plaintiffs can no longer rely solely on the allegations in their *Complaint* in order to establish standing and must instead come forward with admissible evidence to support each element required to establish an

---

[1] In this instance, Plaintiffs' *Complaint* does not allege a violation of 42 U.S.C. § 3604(d) and is distinguishable from Havens in that respect.

actual case or controversy under Article III.  See Fair Housing Council v. Montgomery Newspapers, 141 F.3d 71, 76 (3rd Cir. 1998) (citing Lujan, 504 U.S. at 561).  Even if the Court were to decide the standing question based on the pleadings alone, our Supreme Court has recently retreated from the "liberal federal pleading standards" articulated in Havens, 455 U.S. at 377.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).  Thus, the Court cannot rely on mere conjecture about what "[f]urther pleading and proof might establish."  Havens, 455 U.S. at 377. Instead, the factual allegations in Plaintiffs' existing pleadings "must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.

When viewed in the light most favorable to the Plaintiffs, the undisputed facts and evidence of record in the present case do not support a reasonable inference that Plaintiff Hernandez was a member of the protected class of persons who are domiciled with children and are exercising or seeking legal custody of those children.  Similarly, Plaintiff Hernandez has not identified, much less related her injuries to, any particular member of the protected class of persons domiciled with children who made a "bona fide" offer to rent a space in the Curry Mobile Home Park that was rejected or subjected to additional terms or conditions based on membership in that protected class.  Therefore, Plaintiff Hernandez lacks standing to sue for violations of 42 U.S.C. §§ 3604(a) and 3604(b) for substantially the same reasons articulated in Wasserman, 998 F. Supp. at 1447.  I reach the same conclusion with respect

to the provisions of the Las Cruces Municipal Code that correspond to these two provisions of the Fair Housing Act.  See Las Cruces, N.M., Mun. Code §§ 13-65(1), (2).

Whether Plaintiff Hernandez has standing to sue Defendants for violating 42 U.S.C. § 3604(c) presents a closer question, because this provision of the statute aims to redress discriminatory statements or advertisements rather than the refusal to rent or sell housing on the same terms as persons who are not domiciled with children.  See Wilson, 98 F.3d at 594-95.  Making such a discriminatory statement or advertisement can constitute a violation of 42 U.S.C. § 3604(c) regardless of whether it leads to a refusal to rent or a change in the terms or conditions of a rental.  See United States v. Space Hunters, Inc., 429 F.3d 416, 424 (2nd Cir. 2005).

In these respects, 42 U.S.C. § 3604(c) is somewhat analogous to the prohibition on discriminatory misrepresentation in 42 U.S.C. § 3604(d) which our Supreme Court analyzed in Havens, 455 U.S. at 1121-22.  Both provisions concern a procedural right to receive *information* of a certain quality or veracity rather than a substantive right to receive *housing* on equal terms.  Thus, they extend legal protection to *information seekers* as well as *housing seekers*.  It follows that the class of persons protected by 42 U.S.C. § 3604(c) includes all those persons who receive the discriminatory information in question, and Plaintiff Hernandez is among that class.  See Wilson, 98 F.3d at 594-95.

Being among the protected class does not end the standing inquiry, for the Tenth Circuit has emphasized that mere receipt of discriminatory information alone is not sufficient

to confer standing to sue under 42 U.S.C. § 3604(c).  See Wilson, 98 F.3d at 595-96.  In addition to showing that she is among or related to the protected class at issue here, Plaintiff Hernandez must show that she suffered a legally cognizable injury as a result of receiving the discriminatory information in question.  In other words, a plaintiff's standing to pursue relief under 42 U.S.C. § 3604(c) depends on whether she can show that her receipt of discriminatory information had a concrete and personal effect on her, such as deterring her from making further efforts to obtain housing at the property in question.  See id.

A mere abstract disagreement or feeling of stigma arising from the receipt of such information is not a legally cognizable injury in this context.  "Recognition of standing in such circumstances would transform the federal courts into no more than a vehicle for the vindication of the value interests of concerned bystanders."  Id. at 596 (internal quotation marks and citations omitted).  Thus, standing to sue under this provision may not extend to persons who serves as "testers" with no actual need or intent to obtain the housing about which they receive discriminatory information, nor may such standing extend to persons who persist in seeking housing despite receiving discriminatory information.  See id.

Plaintiff Hernandez does not fall under either of these categories, nor can her situation be accurately described as a mere abstract disagreement or psychological injury.  Based on the intake form attached to Defendant Monarch and Tate's motion for summary judgment [Ex. A to Doc. 55-2] as well as the declaration attached to Plaintiffs' response brief [Ex. 1 to Doc. 58-2], Plaintiff Hernandez has met her burden of showing a genuine need and intent

to pursue housing at the Curry Mobile Home Park in January 2007, because the park where she resided at that time was closing and the Curry Mobile Home Park had several features which she found attractive. She also has shown the discriminatory statements pertaining to familial status that she attributes to Defendant Tate had the effect of deterring her from pursuing housing at that location. In these respects, the evidence of record regarding her situation differs significantly from the Wilson plaintiffs, and I conclude that Plaintiff Hernandez has standing to pursue some form of relief under 42 U.S.C. § 3604(c) and its corollary in the Las Cruces Municipal Code.[2]

### 2.    Plaintiff BFHEJC

Having concluded that Plaintiff Hernandez has standing to seek relief from a violation of the informational requirements in 42 U.S.C. § 3604(c) but not from the types of housing discrimination prohibited by 42 U.S.C. § 3604(a) or (b), the Court next examines whether Plaintiff BFHEJC has standing to pursue relief under any of these provisions or their municipal counterparts. It is necessary for the Court to address Plaintiff BFHEJC's standing because the relief sought by each Plaintiff may be unique to that Plaintiff. For example, Plaintiff Hernandez's claim for damages may differ from the damages allegedly incurred by Plaintiff BFHEJC as an organization. As noted above, each Plaintiff bears the burden of establishing standing for each type of relief sought. See Summers, 129 S. Ct. at 1149.

---

[2]As stated below, the Court will order supplemental briefing on the issue of what form(s) of relief Plaintiff Hernandez has standing to pursue.

Plaintiffs' *Complaint* does not allege that BFHEJC is a membership organization or that it is suing on behalf of any particular members who have standing in their own right. [Doc. 1 at ¶¶ 10-12.]  Under Twombly, 550 U.S. at 555, the Court cannot simply assume BFHEJC's standing based on conjecture about what further pleading and proof might establish as to its membership.  Indeed, Plaintiffs' cannot rest on their pleadings alone to establish standing at the summary-judgment stage. See Lujan, 504 U.S. at 561-62.  For these reasons, I conclude that Plaintiff BFHEJC has failed to meet its burden of pleading or showing that it has *representational* standing on behalf of any of its members.

Nevertheless, Plaintiff BFHEJC still qualifies as a "person" under the Fair Housing Act, see 42 U.S.C. § 3602(d), and can therefore establish *organizational* standing by means of "the same inquiry as in the case of an individual," *i.e.*, by relating some form of prohibited discrimination against a protected class member to a "concrete and demonstrable injury to the organization's activities." Havens, 455 U.S. at 378-79.  In this respect, much of the analysis concerning Plaintiff Hernandez's standing also applies to Plaintiff BFHEJC.

Neither Plaintiff has related their alleged injuries to a member of the class of persons protected by 42 U.S.C. § 3604(a) or (b).  As noted above, Plaintiffs simply have not identified, much less related their injuries to, any particular member of the protected class of persons domiciled with children who made a "bona fide" offer to rent a space in the Curry Mobile Home Park that was rejected or subjected to additional terms or conditions based on membership in that protected class during the relevant time period.  Therefore, Plaintiff

BFHEJC lacks standing to pursue relief for violations of 42 U.S.C. § 3604(a) or (b), or their municipal counterparts.

On the other hand, Plaintiff Hernandez has presented evidence to show that she is among the class of persons protected by the prohibition on discriminatory statements contained in 42 U.S.C. § 3604(c), and thus Plaintiff BFHEJC may establish standing under that provision if the organization can show a sufficient nexus between its injuries and the prohibited discriminatory statements that allegedly were made to Plaintiff Hernandez.

Courts differ with respect to what constitutes sufficient proof of such organizational injuries for purposes of overcoming a motion for summary judgment.  For purposes of establishing standing to challenge a violation of 42 U.S.C. § 3604(c), for example, some courts have held that mere receipt of a discriminatory statement prohibited by this provision of the statute is enough to confer standing.  See, e.g., Ragin v. Harry Macklowe Real Estate Co., 6 F.3d 898, 904 (2d Cir. 1993).  Other courts have implied that an organization's decision to spend time and money on litigation to challenge a Fair Housing Act violation in court creates standing for that litigation.  See, e.g., Village of Bellwood v. Dwivedi, 895 F.2d 1521, 1526 (7th Cir. 1990).

Both of these approaches are not consistent with recent Supreme Court precedent, the majority view in other circuits, or the Tenth Circuit's reasoning in Wilson, 98 F.3d at 595-96.  Our Supreme Court recently emphasized that "deprivation of a procedural right without some concrete interest that is affected by the deprivation--a procedural right *in vacuo*--is

-19-

insufficient to create Article III standing." Summers, 129 S. Ct. 1151. The majority opinion in Summers also rejected the notion that an organization can demonstrate such a concrete interest through "a statistical probability" or mere acceptance of "the organizations' self-descriptions of their membership." Id. at 1151-52.

The problem with such relaxations of the injury-in-fact requirement for organizational standing is that they create a loophole through which any organization can manufacture standing simply by creating a mission statement and deciding to engage in litigation in furtherance of that mission. As the D.C. Circuit observed many years ago in the context of fair-housing litigation: "An organization cannot, of course, manufacture the injury necessary to maintain a suit from its very expenditure of resources on that very suit. Were the rule otherwise, any litigant could create injury in fact by bringing a case, and Article III would present no real limitation." Spann v. Colonial Village, Inc., 899 F.2d 24, 27 (D.C. Cir. 1990) (opinion of Ginsburg, J.); accord Wilson, 98 F.3d at 595; Montgomery Newspapers, 141 F.3d at 79.

Thus, while the expenditure of an organization's resources can constitute an injury-in-fact for purposes of the standing inquiry, the organization also must show that such an expenditure was *fairly traceable* to the Defendants' illegal actions, see Ark. Acorn Fair Housing, Inc. v. Greystone Dev., Ltd., 160 F.3d 433, 435 (8th Cir. 1998), rather than merely an "'investigation' that went on as part of the [organization's] normal day-to-day operations" or as part of the litigation itself. Montgomery Newspapers, 141 F.3d at 78. To establish

-20-

standing for purposes of 42 U.S.C. § 3604(c), the evidence of record must "establish the necessary 'causal connection' between the injury and the [particular advertisements].'" <u>Fair Housing Council v. Main Line Times</u>, 141 F.3d 439, 443 (3rd Cir. 1998) (quoting <u>Lujan</u>, 504 U.S. at 560).

In the present case, it is beyond dispute that someone outside of the organization (namely Plaintiff Hernandez) witnessed the statements in question and reported them to Plaintiff BFHEJC.  This fact distinguishes the present case from <u>Montgomery Newspapers</u> and <u>Main Line Times</u>, where there was no evidence that anyone other than the organization's staff saw the discriminatory advertisements that gave rise to the litigation.

At this stage of the litigation, however, Plaintiff BFHEJC has not demonstrated that its receipt of, and response to, Plaintiff Hernandez's allegations concerning the Defendants in this case caused the organization to deviate from its normal day-to-day operations, which (according to Plaintiffs' own pleading) already consist of receiving complaints from individuals and investigating them through interviews and tests.  [Doc. 1, at ¶ 12.]  In deposition testimony, a BFHEJC employee described the intake interview and testing process used in this case as following the organization's "standard procedure." [Olague Dep. at 34-37; Ex. 29 to Doc. 62-31.]

This deposition testimony also contains conclusory statements to the effect that following these standard procedures in regard to Plaintiff Hernandez "prevented us from promoting other areas of Fair Housing and completing other responsibilities that we had with

contractors and grants in accomplishing our mission of empowering our community." [Id. at 67.]   But this deposition testimony is lacking in specifics as to what other areas of fair housing were overlooked or how the investigation of Plaintiff Hernandez's situation caused Plaintiff BFHEJC to fall short of its responsibilities with contractors and grants.

A possible explanation for this lack of evidence in the record is that the parties did not specifically address the important threshold issue of Plaintiff BFHEJC's standing in their briefs.   In order to assist the Court in further evaluating the standing issue, the Court will invite supplemental briefing limited solely to the issue of Plaintiff BFHEJC's organizational standing to pursue a claim under 42 U.S.C. § 3604(c).   Such supplemental briefing should also address each Plaintiff's standing to pursue the particular forms of relief they are seeking to remedy the violation of Section 3604(c) in this case (such as damages or an injunction).

### C.    Merits of Plaintiff Hernandez's Claim Under 42 U.S.C. § 3604(c)

Having concluded that Plaintiff Hernandez has standing to pursue at least some form of relief aimed at redressing an alleged violation of 42 U.S.C. § 3604(c) and its municipal corrollary, the Court next proceeds to her motion for summary judgment on these claims. The Court's analysis is divided into three components:  first, whether Defendant Tate's statements to Plaintiff Hernandez amount to a violation of this provision of the statute and its municipal corollary; second, whether Defendants qualify for an exemption for "housing for older persons"; and third, whether Defendants Monarch and Swearingen are liable for any unlawful statements that Defendant Tate made to Plaintiff Hernandez.

1.      **Whether Defendant Tate's Statements Violated Section 3604(c)**

Section 3604(c) and the corresponding provision of the Las Cruces Municipal Code

make it illegal to

> make, print, or publish, or cause to be made, printed, or published any notice,
> statement, or advertisement, with respect to the sale or rental of a dwelling that
> indicates any preference, limitation, or discrimination based on race, color,
> religion, sex, handicap, familial status, or national origin, or an intention to
> make any such preference, limitation, or discrimination.

42 U.S.C. § 3604(c).  The statute's implementing regulations make clear that this prohibition

extends to oral statements made by persons engaged in the sale or rental of a dwelling.  See

24 C.F.R. § 100.75(b) (2006).  There is no requirement, however, that such persons be real

estate agents or owners of the dwelling, or that the statements "directly effect a housing

transaction."  Space Hunters, Inc., 429 F.3d at 424.

To prevail on a claim for violating 42 U.S.C. § 3604(c), Plaintiff Hernandez needs

to present evidence that: (1) one or more Defendants made a statement; (2) the statement was

made with respect to the sale or rental of a dwelling; and (3) the statement indicated a

preference, limitation, or discrimination against someone on the basis of that person's status

as a parent living with minor children.  See White v. U.S. Dep't of Housing and Urban Dev.,

475 F.3d 898, 904 (7th Cir. 2007).  "Actions prohibited under § 3604(c) include using words

or phrases which convey that dwellings are not available to a particular group of persons

because of familial status and expressing to prospective renters or any other persons a

-23-

preference or a limitation on any renter because of familial status." Id. at 905 (citing 24 C.F.R. § 100.75(c)(1)-(2) (2006)).

The meaning or connotation of the words or phrases at issue is measured by an objective standard. The question is "whether the alleged statement would suggest to an 'ordinary listener' that a person with a particular familial status is preferred or disfavored for the housing in question." Id. at 905-06; see Jancik v. Dep't of Housing and Urban Dev., 44 F.3d 553, 556 (7th Cir. 1995) (collecting cases).

In this case, it is not disputed that Defendant Tate initially told Plaintiff Hernandez that the Curry Mobile Home Park was "for seniors" and asked her "if it would be just her living in the space." [Doc. 62 at ¶ 18; Hernandez Decl., Ex. 3 to Doc. 62-5, at ¶¶ 7-8, 12; Tate Dep., Ex. 33 to Doc. 62-35, at 152-53.] When he heard her grandchildren playing in the background during a subsequent conversation, Defendant Tate stated that "he did not rent to families with children" and that "children were not allowed at Curry Mobile Home Park because of the number of seniors in the park." [Doc. 62 at ¶¶ 21-22; Hernandez Decl., Ex. 3 to Doc. 62-5, at ¶¶ 14, 17; Tate Dep., Ex. 33 to Doc. 62-35, at 141-42, 149.]

In his deposition testimony, Defendant Tate repeatedly states that he does not remember talking specifically to Plaintiff Hernandez. [Tate Dep., Ex. 33 to Doc. 62-35, at 138, 145, 146.] He admits, however, that it is possible he spoke with her and that his common practice at the time was to ask prospective tenants whether they lived alone and to inform them that Curry Mobile Home Park was a "senior park" for "people without kids"

-24-

and was "not suitable for kids." [Tate Dep., Ex. 33 to Doc. 62-35, at 142, 146, 149, 152-53, 187, 194-95, 200.] The evidence presented by Plaintiff BFHEJC's testers corroborates this common practice of making statements to discourage people with children from renting spaces at the park.[3] [Ex. 4, 5, 6, 7, 8, 9, 10, 11 to Doc. 62.]

Under the objective standard articulated above, the only reasonable inference to be drawn from the evidence of record in this case is that Defendant Tate made statements to Plaintiff Hernandez which would suggest to an "ordinary listener" that persons without children were preferred for the housing in question, while persons with children were disfavored. See White, 475 F.3d at 905-06; Jancik, 44 F.3d at 556. It is equally clear from the evidence of record that Defendant Tate's statements were not directed solely to persons like Plaintiff Hernandez who had visiting grandchildren, but were also directed more generally at persons with legal custody of children sharing the same domicile. Thus, the statements in question are exactly the kind of statements that 42 U.S.C. § 3604(c) and its municipal corollary prohibit.[4]

---

[3]The Court considers the testers' communications as evidence to corroborate Plaintiff Hernandez's claims without recognizing the testers' standing to pursue any claims in their own right or on behalf of Plaintiff BFHEJC as an organization.

[4]The Court does not consider additional statements attributed to Sherry Mackey, another employee of Defendant Monarch, because the analysis at this point is limited to the claims of Plaintiff Hernandez, and the evidence of record is inconclusive as to any communications between Plaintiff Hernandez and Ms. Mackey.

## 2.    The "Housing for Older Persons" Exemption

This conclusion does not end the Court's inquiry, because the response brief filed by Defendants Monarch and Tate asserts that the Curry Mobile Home Park qualifies for the "housing for older persons" exemption to the statutory prohibition on "familial status" discrimination.  <u>See</u> 42 U.S.C. § 3607(b)(2)(c); Las Cruces, N.M., Mun. Code § 13-64(f). "Courts have consistently characterized exemptions to the [Fair Housing Act] as affirmative defenses."  <u>Space Hunters, Inc.</u>, 429 F.3d  at 426 (collecting cases).  In particular, the "housing for older persons" exemption to the Fair Housing Act "is an affirmative defense that goes to the merits of the plaintiffs' case."  <u>Hooker v. Weathers</u>, 990 F.2d 913, 915 (6th Cir. 1993); <u>United States v. Fountainbleau Apts., L.P.</u>, 566 F. Supp. 2d 726, 734 (E.D. Tenn. 2008) (collecting cases).

None of the responsive pleadings filed by the Defendants in this case specifically raise the "housing for older persons" exemption as an affirmative defense [Doc. 7, 9], nor is this exemption raised in the parties' *Joint Status Report* [Doc. 24].  Plaintiffs correctly note that failure to plead an affirmative defense results in the waiver of that defense.  <u>See</u> <u>Bentley v. Cleveland County Bd. of County Comm'rs</u>, 41 F.3d 600, 604 (10th Cir. 1994) (citing Fed. R. Civ. P. 8(c)).

To the extent that the current posture of this case requires the Court to go beyond the pleadings and examine whether or to what extent the Defendants raised the "housing for older persons" exemption in their deposition testimony or other evidence, the only

reasonable inference to be drawn is that none of the Defendants qualify for this exemption.

Neither the owner of the mobile home park (Defendant Swearingen) nor the owners of

Defendant Monarch (Geraldean Sells and Martha Price) gave any indication that the park

was to be operated as "housing for older persons" or took any steps to qualify for such an

exemption.  [Price Dep., Ex. 30 to Doc. 62-32, at 21-22, 44-45, 50, 72-73, 110; Sells Dep.,

Ex. 31 to Doc. 62-33, at 39, 44-46, 60-61, 81-82, 119; Swearingen Dep, Ex. 32 to Doc. 62-

34, at 64, 73, 91, 128; Ex. 23 to Doc. 62-25; Ex. 24 to Doc. 62-26.]

Instead, Defendant Tate (as an employee of Defendant Monarch) apparently took it

upon himself to advise some prospective tenants that the Curry Mobile Home Park was a

"senior park," but he did not follow the steps necessary to qualify for the "housing for older

persons" exemption under the detailed regulations published at 24 C.F.R. §§ 100.305 to

100.307.  [Ex. 17 to Doc. 62-19.]  Courts have summarized these regulatory requirements

as follows:

> (1) at least eighty percent of the occupied units are occupied by at least one
> person who is fifty-five years of age or older; (2) the housing facility publishes
> and adheres to policies and procedures that demonstrate the intent to provide
> housing for persons age fifty-five or older; and (3) the housing facility
> complies with HUD rules and regulations for verification of occupancy.

Simovits v. Chanticleer Condominium Ass'n, 933 F. Supp. 1394, 1401 (N.D. Ill. 1996);

accord  Fountainbleau Apts. L.P., 566 F. Supp. 2d at 736.   In particular, the regulations

require "reliable surveys and affidavits" to verify that the 80% occupancy rate for persons

age 55 or older is satisfied.  See Fountainbleau Apts. L.P., 566 F. Supp. 2d at 735-36 (citing 24 C.F.R. § 100.307).

In this case, Defendant Tate's only "verification" that the park was a "senior park" was a visual survey of some existing park residents and word-of-mouth from one or two individuals at the time he began leasing spaces at the park in 2001.  [Tate Dep., Ex. 33 to Doc. 62-35, at 111-21.]  Neither the park's rules and regulations [Ex. 19 to Doc. 62-21] nor its advertising [Ex. 2 to Doc. 58-3] stated that it was a "senior park" or "housing for older persons," and Defendant Tate did not obtain the consent of the owners to operate it as such.  [Tate Dep., Ex. 33 to Doc. 62-35, at 135, 307.]   Defendant Tate's primary concern was keeping children out of the park, not keeping adults under 55 years old from renting there.  [Tate Dep., Ex. 33 to Doc. 62-35, at 196-97, 282.]  The law is clear that such efforts fall far short of meeting the requirements for "housing for older persons."  See id. at 737-38.

Defendants Monarch and Tate assert, nevertheless, that Defendant Tate's minimal efforts to make the property into a "senior park" amount to "substantial compliance" with these regulatory requirements and are enough to raise a genuine issue of material fact that precludes summary judgment in favor of Plaintiff Hernandez on this issue.  The Court disagrees that such minimal efforts amount to "substantial compliance," because "[e]xemptions from the Fair Housing Act are to be construed narrowly, in recognition of the important goal of preventing housing discrimination."  Massaro v. Mainlands Sections 1 & 2 Civic Ass'n, Inc., 3 F.3d 1472, 1475 (11th Cir. 1993).  To consider Defendant Tate's

efforts as "substantial compliance" would allow the exemption to swallow the rule and produce an absurd result in which property owners and their agents could avoid liability merely by using their own discriminatory statements as evidence of a policy or procedure. See Simovits, 933 F. Supp. at 1402 n. 18.

The Court further concludes that the evidence concerning the "housing for older persons" exemption does not raise a genuine issue of material fact that would preclude summary judgment on liability.  In assessing whether Plaintiff Hernandez is entitled to summary judgment on this issue, the Court bears in mind that:  "'Under general principles of statutory construction, [o]ne who claims the benefit of an exception from the prohibition of a statute has the burden of proving that his claim comes within the exception.'"  Rogers v. Windmill Pointe Village Club Ass'n, Inc., 967 F.2d 525, 527 (11th Cir. 1992) (quoting United States v. Columbus Country Club, 915 F.2d 877, 882 (3rd Cir.1990)).  Thus, for purposes of her summary-judgment motion, Plaintiff Hernandez can negate this defense by pointing to the absence of evidence necessary to support any required element of the "housing for older persons" exemption. See Adler, 144 F.3d at 670-71.  Plaintiff Hernandez has pointed to the absence of such evidence, and Defendants have not met their burden of proving that the exemption applies here.

### 3. **Whether Liability Extends to Defendants Monarch and Swearingen**

It follows from the above analysis that Defendant Tate is liable for making statements to Plaintiff Hernandez that violate 42 U.S.C. § 3604(c) and cannot avail himself of the

"housing for older persons" exemption.  The Court next examines whether Defendants Monarch and Swearingen are liable for Defendant Tate's unlawful statements to Plaintiff Hernandez.

The evidence of record is clear that Defendant Tate was an employee of Defendant Monarch acting within the scope of that employment when he made the prohibited statements that deterred Plaintiff Hernandez from seeking housing at the Curry Mobile Home Park.  [Price Dep., Ex. 30 to Doc. 62-32, at 33-34, 99-100, Sells Dep., Ex. 31 to Doc. 62-33, at 25, 112-15, 128-30, 137, 146; Tate Dep., Ex. 33 to Doc. 62-35, at 284-85.]  Defendant Monarch does not seriously contest that it is liable for Defendant Tate's statements under a theory of *respondeat superior*.  Having established Defendant Monarch's liability on this theory alone, it is unnecessary for the Court to reach the issue of whether Defendant Monarch also is liable to Plaintiff Hernandez under an alternative theory of negligent hiring, supervision, or retention.[5]

The Court next turns to Defendant Swearingen's contention that the liability of Defendants Monarch and Tate does not extend to her as the owner of the mobile home park.  This contention is incorrect, because it is well established "that the duty of a property owner not to discriminate in the leasing or sale of that property is non-delegable."  Walker v. Crigler, 976 F.2d 900, 904 & n.5 (4th Cir. 1992); accord Alexander v. Riga, 208 F.3d 419,

---

[5]The Court notes that much of the evidence cited in support of Plaintiffs' negligent hiring, supervision, and retention theory concerns the events occurring after Plaintiff Hernandez sought housing elsewhere and is therefore more relevant to the claims of Plaintiff BFHEJC which are not considered here due to the need for supplemental briefing on the issues of standing and remedies.

433 (3rd Cir. 2000).  "'Thus, a property owner is liable for the conduct of his employees despite instructions to them not to discriminate.'"  <u>Fountainbleau Apts. L.P.</u>, 566 F. Supp. 2d at 734 (quoting <u>Llanos v. Estate of Coehlo</u>, 24 F. Supp. 2d 1052, 1061 (E.D. Cal. 1998)).

This conclusion follows from our Supreme Court's reasoning that the Fair Housing Act incorporates "traditional vicarious liability rules [which] ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment."  <u>Meyer v. Holley</u>, 537 U.S. 280, 285 (2003).  One of these traditional rules is that "'[t]he principal is liable for the acts and negligence of the agent in the course of his employment, although he did not authorize or did not know of the acts complained of.'"  <u>Id.</u> at 286 (quoting <u>New Orleans, M. & C.R. Co. v. Hanning</u>, 15 Wall. 649, 657 (1873)).

In this case, the principal-agent relationship is established by Defendant Swearingen's property management agreement with Defendant Monarch.  [Ex. 2 to Doc. 62-4; Ex. 1 to Doc. 72-2.]  Further, Defendant Swearingen admits in her deposition testimony that she is the owner of the Curry Mobile Home Park and that, according to the property management agreement she signed, Defendants Monarch and Tate were supposed to deal with tenants and manage the park on her behalf.  [Swearingen Dep., Ex. 32 to Doc. 62-34, at 12, 57-59.]  Under the  theory of *respondeat superior* discussed above, this evidence establishes Defendant Swearingen's liability for Defendant Tate's discriminatory statements to Plaintiff Hernandez.

-31-

Having established Defendant Swearingen's liability based on *respondeat superior* alone, it is again unnecessary to reach the alternative theory of negligent hiring, supervision, and retention at this juncture. Similarly, the Court does not reach Defendant Swearingen's arguments as to punitive damages at this time because of the need for supplemental briefing on the Plaintiffs' standing to pursue each form of relief requested in their *Complaint*.

### D.    Defendant Swearingen's Cross Claim

On June 9, 2009, Defendant Swearingen moved for summary judgment on her cross-claim against Defendant Monarch. On July 2, 2009, Defendants Monarch and Tate filed a notice of a stipulated extension of time until July 10, 2009, for the filing of their response to Defendant Swearingen's motion; however, no response or further notice was filed until July 30, 2009, when counsel informed the Court that a response would be forthcoming the following day. The Court accepts Defendant Monarch and Tate's response as timely filed, but reminds the parties that lengthy extensions of this kind interfere with the Court's case-management deadlines and will not be tolerated in the future. With less than one month until the pretrial conference, briefing on all dispositive motions is considered complete at this point.

The first part of Defendant Swearingen's motion largely follows Plaintiffs' motion in asserting that Defendants Monarch and Tate are liable to Plaintiffs for violating the Fair Housing Act and the related provisions of the Las Cruces Municipal Code. For the same reasons set forth in the above analysis of Plaintiffs' standing and Plaintiffs' motion for

summary judgment, the Court concludes that Defendants Monarch and Tate are liable for Defendant Tate's statements to Plaintiff Hernandez which violated 42 U.S.C. § 3604(c) and its municipal corollary, but no Defendants are liable for violating 42 U.S.C. § 3604(a) or (b) (or the corresponding provisions of the Las Cruces Municipal Code) due to Plaintiffs' lack of standing to pursue those claims. The first part of Defendant Swearingen's motion is granted in part and denied in part in accordance with the above analysis.

The second part of Defendant Swearingen's motion asserts that Defendant Monarch is liable to her in accordance with Section 400 of the Restatement (Second) of Agency (1958), which states that: "An agent who commits a breach of his contract with his principal is subject to liability to the principal in accordance with the principals stated in the Restatement of Contracts." Id. But Defendant Swearingen's motion does not identify what portion of her property management agreement Defendant Monarch allegedly breached, and the agreement's indemnification language states that Defendant Swearingen, as the property owner, agrees to "save the Agent harmless from all damage suits in connection with the management of the property and from liability for injuries suffered by an employee or other persons, whomsoever, with the exception of gross negligence on the part of the Agent." [Ex.1 to Doc. 72-2.]

Similarly, the Fair Housing Act cases cited in this portion of Defendant Swearingen's motion are inapposite because they concern the *principal's* liability for the discriminatory acts of her *agents* and do not address any duty of the agent (in this instance Defendant

Monarch) to indemnify the principal (Defendant Swearingen).  See City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc., 982 F.2d 1086, 1096-97 (7th Cir. 1992); Walker, 976 F.2d at 904.  Even accepting all of the facts set forth in Defendant Swearingen's motion as true, the Court concludes that this motion does not set forth sufficient legal grounds for establishing that Defendant Monarch is liable to Defendant Swearingen on Defendant Swearingen's cross claim.  Defendant Swearingen's motion is therefore denied in part with respect to that issue.

**III.    CONCLUSION**

For the foregoing reasons, the Court concludes that:  (1) Plaintiffs lack standing to pursue claims against any Defendant under 42 U.S.C. §§ 3604(a) and (b), and the corresponding provisions of the Las Cruces Municipal Code; (2) Plaintiff Hernandez has standing to pursue claims under 42 U.S.C. § 3604(c) and Section 13-65(3) of the Las Cruces Municipal Code; (3) Plaintiff Hernandez is entitled to summary judgment as to each Defendant's liability for her claims under 42 U.S.C. § 3604(c) and Section 13-65(3) of the Las Cruces Municipal Code; (4) Defendant Swearingen has not set forth sufficient legal grounds for establishing Defendant Monarch's liability on her cross claim; and (5) it is necessary to invite supplemental briefing on Plaintiff BFHEJC's standing to pursue claims under 42 U.S.C. § 3604(c) and Section 13-65(3) of the Las Cruces Municipal Code, as well as each Plaintiff's standing to pursue each form of relief that each Plaintiff is seeking for these particular claims.

**IT IS THEREFORE ORDERED** that  the *Motion for Summary Judgment Against Plaintiff Hernandez* [Doc. 55] filed by Defendants Monarch Real Estate Corporation and Stephen Tate is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that *Plaintiffs' Motion for Summary Judgment and Memorandum in Support* [Doc. 62] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that *Defendant Swearingen's Motion for Summary Judgment Against Co-Defendant Monarch Real Estate Corp. on Defendant Swearingen's Cross-Claim Against Co-Defendant Monarch Real Estate Corp.* [Doc. 68] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that, by no later than September 8, 2009, the parties shall file and serve simultaneous supplemental briefs addressing Plaintiff BFHEJC's organizational standing to pursue claims under 42 U.S.C. § 3604(c) and Section 13-65(3) of the Las Cruces Municipal Code, as well as each Plaintiff's standing to pursue each *form* of relief that each Plaintiff seeks for these particular claims. No extensions will be granted as to the briefing deadline and no responses will be permitted.  The briefs shall not exceed a total of ten (10) pages.  The trial of this matter is set on the Court's trailing docket on October 13, 2009.

**SO ORDERED** this 27th day of August, 2009, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
**United States District Judge**